E-FILED
Thursday, 19 January, 2012  11:57:28 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JAKE SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-CV-3227 |
| | ) | |
| LARRY PHILLIPS and the | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and detained in Rushville Treatment and Detention Center, pursues a claim under the Americans with Disability Act and a claim under the Equal Protection Clause.  These claims arise from Defendants' alleged refusal to transport Plaintiff in a van equipped with a wheelchair lift.  Defendants are now transporting Plaintiff in a such a van, which moots Plaintiff's claim for injunctive relief.

Before the Court is Defendants' motion for summary judgment, which is granted for the reasons below.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material]  fact." Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant.  Id.

FACTS

Plaintiff has been detained in the Rushville Treatment and Detention Center since the Fall of 2006.  Ten years earlier, Plaintiff suffered a gunshot wound which caused spinal cord and nerve damage, rendering him wheelchair dependent.  However, he is able to walk about 50 feet with a rolling walker and is able to use the facility's gym equipment from his wheelchair with some assistance.

On occasion Plaintiff must be transported outside the facility to appointments and court hearings.  The parties dispute whether Plaintiff is able to transfer himself out of his wheelchair and into a standard van without assistance.  Plaintiff's physical therapist avers that, to her knowledge, Plaintiff "has never demonstrated a need to be transported in a handicap[ped] accessible van."  (Wilson Aff., ¶ 10, d/e 33-2). However, Plaintiff testified that he cannot get in and out of the van on his own and must instead be assisted by guards who lift him up by his

shoulders to help him inside.  (Plaintiff's Dep., p. 32, d/e 33-2).  The

Court accepts Plaintiff's version at the summary judgment stage.  The

parties agree that Plaintiff was never denied transportation to a

scheduled court date or appointment.

In March 2008, Plaintiff filed a grievance which, in relevant part,

asserted that he was entitled to be transported in a handicapped-

accessible vehicle.   The grievance was denied.  At that time the facility

did have a vehicle with a wheelchair lift but, according to the response to

the grievance, that vehicle was "primarily used to escort a different

resident to appointments on a frequent basis.  Depending upon the

average age and disability of the population, another wheelchair lift

vehicle may require consideration."  (d/e 19, p. 10).

On September 15, 2009, Plaintiff filed another grievance asking to

be transported in a "handicap accessible wheelchair lift vehicle."

(Original Complaint, Ex. 1, d/e 1).  The grievance was denied on the

grounds that the medical director had determined that Plaintiff was able

to transfer himself to a regular van.  The grievance further stated that

Plaintiff's restraints were removed while he was getting in and out of the van. The grievance concluded, "Resident Simmons has not requested additional help nor does he require additional equipment at this time. Should the need arise, resident Simmons' transportation needs will be accommodated." (Original Complaint, Ex. 1-A, d/e 1).

Plaintiff's physical therapist avers that Plaintiff refused to attend four "mobility assessment" appointments scheduled to assess Plaintiff's ability to get in and out of a standard van. (Wilson Aff., ¶ 8, d/e 33-2). The physical therapist avers that, "to date, Mr. Simmons has not undergone a mobility assessment to determine whether he requires transport in a handicap accessible van." Id. at ¶ 9.

Plaintiff does not dispute that he refused to attend these scheduled mobility assessments. Instead, he assails Wilson's credibility by pointing out purported contradictions. Plaintiff refers to an "Exhibit 9," which the Court cannot find in the record. Plaintiff asserts that this exhibit establishes that Wilson did in fact conduct a mobility assessment. However, Plaintiff does not dispute Defendants' contention this

particular mobility assessment was conducted in 2006 and did not

involve an assessment of Plaintiff's ability to get into a standard van.

Plaintiff also disputes Wilson's averment that Plaintiff has not been to

physical therapy since 2007.  He again points to "Exhibit 9," which he

says proves he underwent a mobility assessment in September 2009.

However, according to the response to Plaintiff's grievance, that

assessment was conducted by the medical director, not the physical

therapist.  (Original Complaint, Ex. 1-A, d/e 1, p. 12).

In any event, whether Plaintiff refused to attend his scheduled

mobility assessments with the physical therapist is immaterial.  The

Court assumes for purposes of this order that Plaintiff did undergo a

mobility assessment in September 2009 conducted by the medical

director at the facility.  Based on that assessment, Plaintiff's request to

be transported in a van with a wheelchair lift was denied.

In September 2010, Plaintiff filed this lawsuit alleging

discrimination based on his disability.  He sought injunctive relief and

damages.  However, on or around January 2011, the facility began

transporting Plaintiff in a wheelchair lift vehicle, mooting Plaintiff's

injunctive claim.  (Plaintiff's Dep., pp. 24-25, d/e 33-2).  Plaintiff's claim

for damages remains.

## ANALYSIS

Title II of the ADA provides that "no qualified individual with a

disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or

activities of a public entity or be subjected to discrimination by any such

entity." 42 U.S.C. § 12132. [1]

The Court assumes for purposes of this order that Plaintiff is a

"qualified individual with a disability" and that transport outside the

facility is a "service" of the facility.  However, there is no evidence that

Plaintiff was excluded from this service or discriminated against because

of his disability.  He was transported to his court dates along with all the

other non-disabled residents.  He had to be helped into and out of the

---

[1]Title III of the ADA is not applicable.  Title III applies to private entities
providing "places of public accommodation."  42 U.S.C. Section 12181, et seq.;
Baaske v. City of Rolling Meadows, 191 F.Supp.2d 1009, 1013 (N.D. Ill. 2001)(Title
III does not apply to public entities).

standard van, but that was not discrimination.  Helping Plaintiff into

and out of the van was an accommodation of Plaintiff's disability which

enabled Plaintiff to participate in the transportation service provided.

Plaintiff argues that Defendants were required to transport him in a

wheelchair lift van simply because he uses a wheelchair, but Title II of

the ADA does not require a particular accommodation.  Only reasonable

accommodation is required.   28 C.F.R. § 35.130(b)(7)("[a] public entity

shall make reasonable modifications in policies, practices, or procedures

when the modifications are necessary to avoid discrimination on the

basis of disability."); <u>Wisconsin Community Services, Inc. v. City of</u>

<u>Milwaukee</u>, 465 F.3d 737, 750 (7th Cir. 2006)("Unlike Title I and Title

III, Title II of the ADA does not contain a specific accommodation

requirement.").  Plaintiff offers no evidence that the accommodation

offered was unreasonable.

Plaintiff also asserts that he was discriminated against because

another disabled resident was transported in a handicap accessible van,

but Plaintiff was not.  Plaintiff does not identify this disabled resident or

this resident's disability, so Plaintiff has not established that he was

similarly situated to this resident, much less that Defendants' decision

was motivated by an intent to discriminate against Plaintiff because of

his disability.  The record shows that Plaintiff was able to be transported

in a regular van with some assistance.  There is no indication that this

other resident enjoyed the same physical capabilities as Plaintiff.  Thus,

no rational juror could find that Defendants discriminated against

Plaintiff because of his disability under either Title II or the equal

protection clause.

IT IS THEREFORE ORDERED:

    1) Defendants' motion for summary judgment is granted (d/e 33).

The clerk of the court is directed to enter judgment in favor of

Defendants and against Plaintiff.  All pending motions are denied as

moot, and this case is terminated, with the parties to bear their own

costs.  All deadlines and settings on the Court's calendar are vacated.

    2) If Plaintiff wishes to appeal this judgment, he must file a notice

of appeal with this Court within 30 days of the entry of judgment.  Fed.

R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis

should identify the issues Plaintiff will present on appeal.  See Fed. R.

App. P. 24(a)(1)(c).  If Plaintiff does choose to appeal, he will be liable

for the $455.00 appellate filing fee regardless of the outcome of the

appeal.

ENTERED: January 19, 2012

FOR THE COURT:

s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
